UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OSIAS TORION,
    Plaintiff,

v.

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,
    Defendant.

Case No. 17-cv-00422-PJH

**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE**

Re: Dkt. No. 25

Defendant's motion to dismiss plaintiff's first amended complaint came on for hearing before this court on June 28, 2017. Plaintiff Osias Torion appeared through his counsel, Elliot Gale. Defendant Chase Bank USA, N.A. ("Chase"), erroneously sued as JPMorgan Chase Bank, National Association, appeared through its counsel, Megan Rodgers and Emily Henn. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion to dismiss WITH PREJUDICE, for the following reasons.

## BACKGROUND

### A. Chapter 13 Bankruptcy

Chapter 13 bankruptcy allows debtors with regular income to "repay creditors in part, or in whole, over the course of a three-to-five-year period." In re Blendheim, 803 F.3d 477, 485 (9th Cir. 2015). Under Chapter 13, the debtor proposes a debt repayment plan that must comply with a number of statutory requirements. Id. at 485–86. "A Chapter 13 debtor seeking a discharge typically proposes a plan in which the discharge is granted at the end of the proceeding, after the debtor completes all required payments under the plan." Id. at 486. If the Chapter 13 plan satisfies all of the statutory requirements, the bankruptcy court approves or "confirms" the plan. 11 U.S.C. § 1325(a); In re Flores, 735 F.3d 855, 857 (9th Cir. 2013).

If the debtor makes the payments under the confirmed plan, the bankruptcy court will grant a discharge of the debts, which "releases debtors from personal liability on claims and enjoins creditors from taking any action against the debtor." Blendheim, 803 F.3d at 486–87. "Many debtors, however, fail to complete a Chapter 13 plan successfully." Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015). If the debtor fails to make the required payments, he may either "convert [the] Chapter 13 case to a [bankruptcy] case under a different chapter," or dismiss the action. Blendheim, 803 F.3d at 487. The effect of dismissal is to restore the legal status quo prior to the Chapter 13 filing: "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies." Id. at 487.

**B.     Procedural History**

This case is one of over 200 similar actions in this district filed by the Sagaria Law firm against consumer credit reporting agencies and credit furnishers in 2016 and 2017. On March 20, 2017, this court dismissed a substantially similar complaint in Burrows v. Experian Info. Sols., Inc., No. 16-CV-06356-PJH, 2017 WL 1046973 (N.D. Cal. Mar. 20, 2017) ("Burrows"). Burrows described the factual context as follows:

> Plaintiffs are individuals who filed for Chapter 13 bankruptcy and allege that their debts were reported inaccurately in light of their confirmed Chapter 13 plan. Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), or both credit reporting agencies ("CRAs") are named as defendants. Also named as defendants in most of the cases are "furnishers" of credit information, such as [Chase] . . . .
>
> The complaint accuses CRAs and furnishers of "ignor[ing] credit reporting industry standards for accurately reporting bankruptcies." Allegedly, this inaccurate reporting is an effort to perpetuate the "myth" that filing for bankruptcy ruins consumers' credit scores for years.
>
> The complaint explains in some detail how a consumer's FICO credit score is calculated, and how the score derives from information that furnishers report to CRAs. Plaintiffs then describe the Metro 2 credit reporting standards promulgated by the Consumer Data Industry Association (the "Metro 2 standards" or "CDIA guidelines"), which plaintiffs allege is the "industry standard for accurate credit reporting." The Metro 2 standards

2

> have different "CII indicator" codes that are used to note the filing and discharge of Chapter 7 and 13 petitions. Plaintiffs allege that the CII indictor "D" is used when a Chapter 13 petition has been filed, but no discharge yet entered.
>
> The complaint alleges that, prior to the confirmation of a Chapter 13 plan, the "accepted credit reporting standard" is to "report the outstanding balance amount as of the date of filing" of the bankruptcy petition, and to note the bankruptcy filing with CII indicator code D. Post-confirmation, however, plaintiffs allege that the balances should be updated to reflect the confirmed Chapter 13 plan. Reporting ongoing past due amounts and late payments, instead of only indicator D, is "not generally accepted as accurate by the credit reporting industry."

Burrows, 2017 WL 1046973 at *1–*2 (citations omitted).

The original complaint in this case was filed by Torion against Chase and Equifax, Inc. on January 26, 2017. Dkt. 1. Following this court's order in Burrows, Torion filed his first amended complaint (the "FAC") on April 28, 2017. Dkt. 23. The parties subsequently stipulated to the dismissal of Equifax. Dkt. 34. Chase now moves to dismiss the FAC for failure to state a claim. Dkt. 25.

**C.    The FAC's Allegations**

The FAC largely follows the template pleading used in these cases. However, the allegations regarding the reported debt balances (i.e., whether the amounts owed must be updated to reflect the lower amounts per the confirmed Chapter 13 plan) have been removed. Instead, the FAC focuses on two interrelated alleged inaccuracies: (1) that Chase "is reporting two accounts of Plaintiff's as being in collections and charged off despite the inclusion of the account in Plaintiff's chapter 13 bankruptcy filing," FAC ¶ 2; and (2) that Chase is "not following industry standards and listing the correct CII D indicator, as the CII should have been updated to D instead of kept as charged off and in collections," FAC ¶ 96.

Torion filed for Chapter 13 bankruptcy on May 31, 2012 "in order to reorganize and repair [his] credit worthiness and FICO score." FAC ¶ 78. Torion's Chapter 13 plan was confirmed on September 28, 2012. FAC ¶ 82. On April 21, 2012, Torion ordered a three-bureau credit report. FAC ¶ 86. Plaintiff noticed several inaccuracies in the reports

3

regarding two Chase accounts. In particular, Chase reported Torion's debts as in collections and charged off without "any reference whatsoever that the accounts had been included in Plaintiff's bankruptcy." FAC ¶¶ 88, 95.

On September 15, 2016, Torion disputed these alleged inaccuracies by contacting Experian. FAC ¶ 89. On October 19, 2016, plaintiff ordered a second three-bureau credit report to ensure that the accounts had been corrected. FAC ¶ 93. However, Chase continued to report the two accounts as in collections and charged off, without listing the CII D indicator. FAC ¶¶ 95–96, 104–105. As a result, the Chase accounts appear "to be in active collections whereby any lender would or could assume that Plaintiff's wages could be garnished," even though the accounts are not in active collections in light of the bankruptcy filing. FAC ¶¶ 99, 107. Thus, the reporting falsely makes Torion appear "derelict in addressing outstanding debt" and "less credit worthy" than he actually is. FAC ¶ 107. Indeed, because Chase is "simultaneously reporting the account as in collections and reporting that the account is current in the payment history," its reporting is "contradictory and facially inaccurate." FAC ¶ 110.

Torion brings two claims against Chase, one under the Fair Credit Reporting Act ("FCRA") and one under the California Consumer Credit Reporting Agencies Act ("CCRAA"). The FCRA claim alleges that Chase violated FCRA "by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate information." FAC ¶ 115. Plaintiff alleges that any reasonable investigation would have revealed that Torion had filed for Chapter 13 bankruptcy and that Chase's reporting was not comporting with industry standards. FAC ¶¶ 117, 132. The second cause of action under CCRAA alleges that Chase "intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards." FAC ¶ 154.

///

///

///

4

**LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007).

Legally conclusory statements, not supported by actual factual allegations, need not be accepted by the court. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679.

In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008).

**ANALYSIS**

Chase's motion argues that the allegations in Torion's FAC are materially indistinguishable from those in Burrows, and must be dismissed for two reasons. First, Chase asserts that there is nothing inaccurate about the information furnished because all of Torion's credit reports prominently disclose the existence of the pending Chapter 13 bankruptcy. As a result, no reasonable potential creditor could be misled by Chase's reporting. Second, Chase claims that the FAC does not allege any recoverable statutory or actual damages under FCRA. The court finds that the FAC does not plausibly plead an inaccuracy and GRANTS Chase's motion to dismiss on that basis. As a result, the court need not reach the damages issue.

**A.    Chase's Administrative Motion to File Under Seal**

As a preliminary matter, for the reasons below and those stated on the record at the hearing, the court GRANTS Chase's administrative motion for leave to file Torion's three credit reports under seal. The court finds that compelling reasons exist to seal these documents because the information in the reports is private in nature, and its public filing could expose Torion to identity theft. See Nursing Home Pension Fund v. Oracle Corp., No. C01-00988 MJJ, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("protect[ing] an individual's privacy interest" and "prevent[ing] exposure to harm or identity theft" are "compelling reasons" to seal); Burton v. Nationwide Mortg. LLC, No. 1:13-cv-00307 LJO JLT, 2014 U.S. Dist. LEXIS 124336, at *2 (E.D. Cal. Sept. 4, 2014) (granting motion to seal credit report).

Moreover, although the credit reports were not attached to the complaint, the court will consider them on Chase's motion to dismiss pursuant to the incorporation by reference doctrine. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (non-pleading documents may be considered on Rule 12(b)(6) motion if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim"). Torion does not dispute the authenticity of the credit reports or otherwise oppose the court's consideration of this evidence.

Chase also asks the court to take judicial notice of filings from Torion's bankruptcy case. The proceedings of other courts are properly subject to judicial notice and the court therefore GRANTS this request. See Duke Energy Trading & Mktg., L.L.C. v. Davis, 267 F.3d 1042, 1048 n.3 (9th Cir. 2001). Chase merely uses these documents to establish that Torion had not completed his Chapter 13 plan or obtained a discharge when the FAC was filed.

**B.      Whether the FAC Plausibly Alleges an Actual Inaccuracy**

Plaintiff's FCRA claim is made pursuant to 15 U.S.C. § 1618s-2(b). Under § 1618s-2(b), after receiving a notice of dispute from a CRA, a furnisher must conduct a reasonable investigation with respect to the disputed information and report the results to the CRA. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154, 1157 (9th Cir. 2009). FCRA creates a private right of action for willful or negligent noncompliance with this "reinvestigation" requirement. Id. at 1154.

To state a reinvestigation claim under FCRA, a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a CRA; (3) the CRA notified the furnisher of the information about the dispute; and (4) the furnisher and/or CRA failed to reasonably investigate the inaccuracy. Biggs v. Experian Info. Sols., Inc., No. 5:16-CV-01507-EJD, 2016 WL 5235043, at *1 (N.D. Cal. Sept. 22, 2016); Gorman, 584 F.3d at 1154–57.

An actual inaccuracy is a required element of an FCRA claim. Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); Gorman, 584 F.3d at 1163 ("[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute."). To be inaccurate, information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman, 584 F.3d at 1163.

**1. This Court's Ruling in <u>Burrows</u>**

Torion's FCRA claim is based on two related inaccuracies. First, the FAC alleges that Chase "is reporting two accounts of Plaintiff's as being in collections and charged off despite the inclusion of the account in Plaintiff's chapter 13 bankruptcy filing." FAC ¶ 2. Second, the FAC generally alleges that Chase is "not following industry standards" because it did not report "the correct CII D indicator." FAC ¶ 96.

In its decision in <u>Burrows</u>, this court has already ruled on the legal issues raised in this motion. As to whether reporting an account as "in collections," not reporting the existence of the bankruptcy proceeding, or not reporting a CII D indicator could be misleading under FCRA, the court held:

> [P]laintiffs allege that defendants' failure to report a CII D indicator, failure to note that an account is being disputed, and/or reporting a debt as "in collections"/"charged off" are inaccurate. The court finds that several of these inaccuracies may state a claim under FCRA, but that the complaint's allegations are too conclusory as currently pleaded.
>
> The first issue is whether the failure to report to a CII D indicator, or to otherwise note that a bankruptcy petition has been filed, makes reporting "inaccurate" under FCRA. The court finds that the complaint could state a claim on this basis. If the fact of the bankruptcy is not noted, the reporting may be misleading, because the existence of a bankruptcy filing is information that could affect the decision-making of potential creditors. <u>See, e.g.</u>, <u>Doster</u>, 2017 WL 264401, at *6 (granting leave to amend to support allegations that the credit report "contained no indication at all that the debts were the subject of a pending bankruptcy"). Moreover, the omission of the bankruptcy filing from a credit report may render other aspects of the reporting misleading. For example, if a creditor sees that an account is "in collections," but no bankruptcy filing is noted, the creditor may believe that the account is being actively collected upon even though collection efforts have been stayed by the bankruptcy. . . .
>
> As to the allegations that accounts were reported as "in collections" or "charged off," the complaint does not contain enough detail to determine whether this inaccuracy could state a claim under FCRA. Without more context, it is not clear whether plaintiffs claim that the furnishers are reporting that the account is <u>currently</u> in collections (which is potentially misleading in light of the bankruptcy stay) or simply that the account <u>was</u> in collections at some point in the past. The latter would not be misleading, assuming that it is factually accurate and that the bankruptcy filing is noted.

> In summary, although the court finds that these alleged inaccuracies could state a claim under FCRA, the complaint as pleaded is too conclusory to tell. With only a few sentences devoted to each disputed account, it is not clear whether a reasonable potential creditor could actually be misled. It is not clear, for example, if there is any other information in the credit report that discloses the existence of the bankruptcy filing. Thus, the court will provide plaintiffs leave to amend to plead additional factual detail to state a plausible claim that these alleged inaccuracies were misleading in context.

Burrows, 2017 WL 1046973 at *8. To resolve this motion, the court need only apply these principles to the specific allegations in Torion's FAC.

### 2. Whether Reporting the Chase Accounts as "in Collections" and/or Not Using the CII D Indicator is Plausibly Alleged as Misleading

Burrows held that reporting an account as in collections and not reporting the CII D indicator despite a pending chapter 13 bankruptcy "could state a claim under FCRA." Burrows, 2017 WL 1046973 at *8. The court reasoned that if "no bankruptcy filing is noted, the creditor may believe that the account is being actively collected upon even though collection efforts have been stayed by the bankruptcy." Id. (emphasis added).

Thus, while the court in Burrows found that reporting an account subject to a Chapter 13 bankruptcy as "in collections" could be misleading in context, that holding was based on the assumption that a potential creditor was not otherwise informed of the pending bankruptcy. Here, Chase rightly points out that all three credit reports prominently disclose the existence of Torion's bankruptcy filing in the "Public Records" section. See Dkt. 27 Ex. A at 26; Ex. B at 23; Ex. C at 19. Moreover, all of the reports further indicate that there are "[n]o collection accounts" in the "Collections" section. Id. Ex. A at 24; Ex. B at 21; Ex. C at 17. Finally, all the reports indicate on the "Account Summary" page that Torion has "$0" in credit debt. Id. Ex. A at 2; Ex. B at 2; Ex. C. at 2. All of this reporting is consistent with Torion's pending Chapter 13 bankruptcy proceeding, and directly informs potential creditors of the existence of the bankruptcy.

Fundamentally, plaintiff must allege that Chase's reporting was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Gorman, 584 F.3d at 1163. Plaintiff claims that Chase's reporting is

9

1  inaccurate because Equifax's credit report indicates that the Chase accounts are "in
2  active collections," making Torion appear "less credit worthy" and potentially misleading
3  creditors to conclude that that Torion's "wages could be garnished," FAC ¶¶ 98–99, 107.
4  The court finds that these allegations are not plausible in light of the full context of the
5  actual reporting in the credit reports.

6  It is true that, in the Equifax report, the specific Chase accounts are described as
7  "placed for collection" and "charged off." Dkt. 27 Ex. A at 12–13.[1] However, when read
8  in context, this reporting is not misleading because the bankruptcy is clearly disclosed
9  elsewhere in the credit report. This eliminates the possibility that a lender would be
10 misled by the reporting. See In re Experian Info. Sols. Credit Reporting Litig., No. C 16-
11 05674 WHA, 2017 WL 1319843, at *1 (N.D. Cal. Mar. 28, 2017) ("[The] credit reports
12 also include a clear-cut statement up front that the debtor is in bankruptcy proceedings,
13 . . . so there is no basis for insisting as a matter of law that such a notation accompany
14 each line item."); Mestayer v. Experian Info. Sols., Inc., No. 15-CV-03645-EMC, 2016 WL
15 7188015, at *3 (N.D. Cal. Dec. 12, 2016) ("[T]he disclosure of the bankruptcy filing
16 vitiates the risk that any deviation from Metro 2 could be misleading . . . ."); but see
17 Cristobal v. Equifax, Inc., No. 16-CV-06329-JST, 2017 WL 1489274, at *5 (N.D. Cal. Apr.
18 26, 2017) ("The Court sees no reason why Plaintiff could not ultimately prove that the
19 lack of a D code adversely affected her credit even if her credit report otherwise noted the
20 fact of her bankruptcy.").

21 Instead, a potential creditor would more naturally understand Chase's reporting to
22 mean only that the account was previously referred to collections, but that it is no longer
23 being collected on because of the bankruptcy filing. Indeed, all of the credit reports state
24 that Torion has no accounts in collections, and the balance on the accounts is $0. These
25 facts belie plaintiff's allegation that the Chase accounts are being inaccurately reported

---

[1] The Chase accounts are reported differently in the Experian and Trans Union reports. The Experian report contains a notation that the "[d]ebt [is] included in or discharged through bankruptcy chapter 13." Id. Ex. B at 9–10. In the Trans Union report, the same field indicates that the "payment status" is "wage earner or similar plan." Id. Ex. C at 7–8.

1 as "in active collections."  FAC ¶ 98.  Thus, even construing the FAC in the light most

2 favorable to the pleader, Torion fails to allege a plausible inaccuracy regarding the Chase

3 accounts.  Since an inaccuracy is a required element, the FAC therefore does not state a

4 claim under FCRA.

5     Finally, to the extent that Torion's claim is based solely on an alleged failure to

6 comport with credit industry reporting guidelines, the court has already rejected this

7 theory.  See Burrows, 2017 WL 1046973 at *7 ("[N]oncompliance with Metro 2 standards

8 does not, in and of itself, render reporting misleading" because "FCRA does not mandate

9 compliance with Metro 2 or any other particular set of industry standards.").  That ruling

10 accords with the weight of persuasive authority in this district.  See id. (citing cases).

### 3. The CCRAA Claim

12     The parties agree, and this court has previously held, that the CCRAA claim rises

13 and falls with the FCRA claim because CCRAA "mirrors" FCRA.  Guimond, 45 F.3d at

14 1335; Olson v. Six Rivers Nat'l Bank, 111 Cal. App. 4th 1, 12 (2003).  Because the FAC

15 does not state a claim under FCRA, the CCRAA claim fails as well.

### CONCLUSION

17     For the foregoing reasons, Chase's motion to dismiss is GRANTED.  Because

18 plaintiff has already been afforded an opportunity to amend his complaint following this

19 court's decision in Burrows, and was still unable to state a claim, the dismissal is WITH

20 PREJUDICE.  The Clerk shall close the file.

21     **IT IS SO ORDERED.**

22 Dated: July 13, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge